**UNITED STATES of America ex rel.
Augustus YOUNG**

v.

**A. T. RUNDLE, Superintendent, State
Correctional Institution, Grater-
ford, Pennsylvania.**

**Misc. Nos. 3927, 69–78.**

United States District Court
E. D. Pennsylvania.

Nov. 25, 1969.

Augustus Young, pro se.

Joseph Musto, Asst. Dist. Atty., Phil-
adelphia, Pa., for respondent.

## OPINION

MASTERSON, District Judge.

Augustus Young, a prisoner at the
State Correctional Institution at Grater-
ford, Pennsylvania, (hereinafter the re-
lator), has filed two petitions for the
Writ of Habeas Corpus which attack
convictions on two different ses of in-
dictments.

According to the respondent's return
to the Court's Order to show cause, the
relator was indicted in the November
Sessions, 1957, on Bill Nos. 105 (Bur-
glary with Intent to Commit a Felony,
Rape); 106 (Robbery); 107 (Indecent
Assault); 108 (Assault and Battery with
Intent to Ravish, Rape); 109 (Sodo-
my); 110 (Impersonating an Officer);
and 111 (Assault and Battery and Re-
sisting Arrest). Relator was tried on
January 9, 1958, before the Honorable
Peter F. Hagan sitting with a jury.
Relator was represented by Robert L.
Nix, Esquire. The jury returned a ver-
dict of guilty on all Bills except Numbers
109, 110 and 111. Sentence was deferred

pending the filing of a motion for new trial and argument thereon. The motion for a new trial was denied on March 18, 1958, and on March 24, 1958 relator was sentenced from 5 to 10 years on Bill Nos. 105, 106, and 108, to run concurrently with sentence being suspended on Bill No. 107. No direct appeal was taken from judgment of sentence.

The effective date of sentence was November 3, 1957, giving the relator a minimum date of November 3, 1962, and a maximum date of November 3, 1967. Relator was paroled from Graterford on these sentences on November 3, 1963.

Subsequently, Mr. Young was indicted for crimes allegedly committed while on parole. September Sessions, 1965. Bill Nos. 397 to 399 charged the relator with Assault and Battery, Indecent Assault, Burglary and Statutory Rape. After a trial by jury on December 14, 1965, the relator was found guilty on all Bills. On February 7, 1966, relator's motion for a new trial and in arrest of judgment was denied, and on February 15, 1966, the relator was sentenced to four to eight years imprisonment.

After sentence was imposed upon these convictions, Young was delivered to the Eastern Diagnostic Classification Center in Philadelphia as a convicted parole violator. He was later returned to the State Correctional Institution at Graterford, Pennsylvania. The Pennsylvania Board of Probation and Parole set his new maximum date at February 15, 1970, and recommended that he serve until that date.

Through the two petitions now before this Court, the relator attacks the legality of all sentences now pending.

## I. MISCELLANEOUS NO. 3827

The relator presently attacks the legality of his 1958 conviction on the following grounds:

   (a) illegally seized evidence was introduced at trial; and

   (b) the trial Judge's charge to the jury was erroneous and prejudicial.

The relator also urges that his petition is properly before this Court because the state courts have "inordinately" delayed considering the above contentions. According to the respondent's answer to our Order to show cause, the relator had filed a petition in November, 1966, under the provisions of the Pennsylvania Post-Conviction Hearing Act, which attacked the legality of his 1958 conviction on the same grounds as alleged here. On June 19, 1967, the Honorable Edmund Spaeth granted relator leave to file post trial motions, nunc pro tunc, as to Bill Nos. 105, 106 and 108 of November Sessions, 1957.

In his habeas corpus petition, the relator provided us with a hand-written copy of a typed letter he allegedly received from Mr. Melvin Dildine, Chief of the Appeal Division, of the Defender Association of Philadelphia.[1] The letter, which is dated August 30, 1967, advised the relator that motions in arrest of judgment and for a new trial had been filed in the state courts on his behalf. The letter goes on to state that these motions were listed for argument on June 12, 1967, but were continued because the relator had not been brought down from prison. Mr. Dildine assured the relator that these motions would be listed for disposal as soon as possible. However, in his answer to our Order to show cause, the Philadelphia District Attorney stated that "it appears that no post trial motions were filed and therefore no action was taken by the state courts on relator's contentions."

■ We have made subsequent inquiry regarding this factual dispute and have been informed by the Defender Association that Mr. Young's file has apparently been misplaced and, thus, they are unable to either affirm or deny the contents of the letter Mr. Young receiv-

1. Upon our request, the relator forwarded to us the original typed letter, a xerox copy of which has been made a part of this record.

ed. However, further investigation by the District Attorney has revealed that his private files note that a formal motion for a new trial was received by his office on May 2, 1967. We can only agree with the District Attorney's assessment that "it is probably true that a motion for a new trial was really filed and was lost in the administrative process." [2] Under these circumstances, we find that the relator need not exhaust his state remedies since there are existing circumstances that have rendered such a process ineffective to protect his rights and have resulted in an inordinate delay in the disposition of his claims in the state courts. 28 U.S.C. § 2254(b).

Since we have ruled that relator's petition is properly before this Court for adjudication, we will next inquire into the sufficiency of the contentions which relator asserts merit the granting of the Writ of Habeas Corpus. [3]

The conviction under the 1957 Bills stem from an incident which took place during the early morning hours, beginning at approximately 5:45 A.M., of November 2, 1957. The trial record reflects that a female student (hereinafter the "prosecutrix") at the University of Pennsylvania, while asleep in her room in a campus sorority house, was awakened by noises caused by the entrance of an intruder into her room. The intruder, identified at trial as the relator (N.T. p. 24), coerced her silence with a threat to use a gun allegedly in his possession. He ordered the prosecutrix to undress and robbed her of a small amount of money. He then raped her. After intercourse, the relator requested that the prosecutrix meet him again. She assented and arranged a further meeting with the relator for that eve-

ning. The relator then left the apartment at approximately 6:30 A.M.

After this harrowing experience, the prosecutrix washed up and went back to sleep. Apparently, she did not wish at this time to alert her house mother, whose room was next door, or her sorority sisters as to what happened for fear of alarming them. She then slept for about three hours, had breakfast, and then reported the incident to the University authorities a little after 10:00 A.M. (N.T. p. 91). The University authorities notified the Philadelphia Police Department, who arranged for the prosecutrix to keep her appointment with the relator at the designated time and location. When the relator approached the prosecutrix at the rendezvous, one of the stake-out party waiting nearby ran toward him and shouted, "Halt, I am the police." Thereupon, the relator attempted to flee but was apprehended after a short scuffle with the police.

After the relator was subdued, the prosecutrix identified him as the man who had assaulted her earlier that day. The policemen then searched the relator and discovered in his pocket a black cloth belt, which the prosecutrix identified at trial as having been taken from her room. This belt was introduced into evidence. It is the relator's contention that this evidence was obtained through a constitutionally impermissible search and seizure. We do not agree.

Initially, we find that the identification by the prosecutrix of the relator furnished sufficient probable cause for the arrest of the relator. See, United States ex rel. Johnson v. Rundle, 404 F.2d 42 (3rd Cir. 1968). We also hold that when the arrest was made, it was reasonable for the arresting officers to -

2. The October 27, 1969 letter which we received from the Philadelphia District Attorney has been docketed and made a part of this record.

3. After requiring the state authorities to show cause why the writ ought not issue, and summoning the transcript and record

of the 1958 trial, we concluded that the record was sufficiently complete to allow an examination of the relator's contentions without the appointment of counsel or an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

search relator in order to remove any weapons that the latter might seek to use in order to resist arrest or to effect his escape, especially where the arresting officers had been informed earlier by the prosecutrix that the relator had threatened her with a weapon. Further, it was entirely reasonable for the arresting officers to search for and seize any evidence on the relator's person in order to prevent its concealment or destruction. We hold, then, that the state court record adequately reflects that the black cloth belt was discovered pursuant to a permissible search incident to a valid arrest and was, therefore, properly admitted into evidence at the relator's trial.

■ The relator's second contention is that the trial judge delivered a prejudicial charge to the jury. The relator testified that at the time the rape-assault took place he was at home. He stated that he had left a party sometime after 4:00 A.M. and went home. His wife was awake, asked the time, to which relator replied: "4:30". Sometime later at his wife's request, he testified that he prepared a bottle for their baby, conversed with his wife and then went to sleep. (N.T. pp. 158–160). His wife did not take the stand to testify at his trial.

The portion of the judge's charge which the relator asserts was prejudicial reads as follows:

"The defendant, members of the jury, did not call his wife to corroborate his statement that he was at home from 4:30 A.M. and many hours thereafter, the time during which it is charged by the prosecutrix that he had entered her room. He said that his wife was awakened when he returned home at 4:30; not only that, but she had asked him the time and he told her it was 4:30. She, therefore, would have been a very important witness for her husband in that if the defendant's accounts of his whereabouts were truthful, she could have corroborated his testimony. The defendant gave no explanation for his failure to produce his wife as a witness. You can, therefore, infer, members of the jury, from the failure of the defendant to call his wife as a witness, that if she had been called she would not have corroborated his testimony in this important respect." (N.T. pp. 213–214).

In United States v. Restaino, 369 F.2d 544 (3rd Cir. 1966), the court adopted McCormick's statement of the "missing witness rule" to be the more practical. See also 2 Wigmore, Evidence §§ 285–288 (3d ed.). As McCormick states:

"* * * [W]hen (1) a potential witness is available, and (2) appears to have special information relevant to the case, so that (3) his testimony would not merely be cumulative and (4) where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if (5) such party does not produce his testimony, the inference arises that it would have been unfavorable." McCormick, Evidence § 249 at 534.

Applying the rule to the facts presently before us, the ultimate question becomes: would the testimony of relator's wife ordinarily favor the relator? Since there is nothing in the record or relator's petition which would indicate the contrary, we necessarily answer this question in the affirmative. This being so, we find that the trial court did not err in its charge.[4]

■ Our finding is further supported by the case law which holds that an allegation of impropriety in the charge to the jury entitles a state prisoner to fed-

---

4. We note, in passing, that Wigmore's test of "greater availability" of the witness would also work to the relator's detriment, since the wife would not have been a competent witness for the Common-wealth, unless the relator waived the privilege at trial. 19 P.S. §§ 683, 684. See Wigmore, Evidence §§ 285–288 (3d ed., 1964 Supp).

eral habeas corpus relief only where it is shown that it constituted fundamental error resulting in a deprivation of due process. United States ex rel. Powell v. Commonwealth of Pennsylvania, 294 F. Supp. 849 (E.D.Pa.1968); United States ex rel. Chase v. Rundle, 266 F.Supp. 487, 490 (M.D.Pa.1967). As the Third Circuit Court of Appeals stated in United States ex rel. Cannon v. Maroney, 373 F.2d 908, 910 (3rd Cir. 1967):

"It is well settled that errors committed during the trial of a criminal case in a state court are not subject to review in a habeas corpus proceeding in a federal court unless it is shown that the errors were so conspicuously prejudicial as to deprive the defendant of a fair trial."

Upon review of the notes of testimony of the relator's trial, and the transcript of the trial Judge's charge to the jury, we conclude that the charge with regard to the failure of the relator's wife to testify in corroboration of his story clearly did not violate the constitutional guarantee of due process. On the contrary, the passage of which complaint is now made appears in the context of a charge which pointed out weaknesses in the Commonwealth's case as well as those in the relator's defense. (See N.T. pp. 223–224).

Therefore, we conclude that none of the grounds raised by the relator in attacking the validity of the conviction under the 1957 Bills provide a reason for the issuance of the Writ of Habeas Corpus. His present incarceration, however, stems from his recommitment under these Bills as a convicted parole violator. For this to stand it must be shown that the conviction under the 1965 Bills, which led to the revocation of parole, was achieved in a constitutionally permissible fashion. Relator attacks his conviction on these later Bills on the ground that they also resulted from a denial of his rights under the Federal Constitution. We now proceed to examine these contentions.

## II. MISCELLANEOUS NO. 69–78

█ Relator was sentenced to 4 to 8 years imprisonment as a result of having been found guilty by a jury on Bill Nos. 397 (Assault and Battery); 398 (Indecent Assault); 399 (Burglary and Statutory Rape). September Sessions, 1965. Relator appealed the judgment of sentence on his own behalf. The Superior Court affirmed the judgment of sentence, per curiam, in Commonwealth v. Young, 208 Pa.Super. 741, 221 A.2d 567 (1966). The Supreme Court of Pennsylvania granted allocatur, vacated the judgment of the Superior Court and remanded the record to the Court of Quarter Sessions of Philadelphia County to hold a hearing to determine if relator was deprived of effective assistance of counsel. See Commonwealth v. Young, 424 Pa. 157, 226 A.2d 86 (1967). On June 19, 1967, the Honorable Edmund Speath granted relator leave to appeal. On appeal, relator was represented by counsel who raised the following issues: (a) the insufficiency of the evidence to sustain a conviction; (b) the inadequacy of the trial court's charge to the jury on the question of identification. The Superior Court, on October 27, 1967, affirmed the judgment of sentence per curiam at Commonwealth v. Young, 211 Pa.Super. 723, 234 A.2d 321 (1967).

On April 15, 1968, the relator filed a petition under the provisions of the Pennsylvania Post-Conviction Hearing Act alleging:

(a) that he was illegally arrested;

(b) that he was placed in an illegal line-up;

(c) that he was held incommunicado for six days and was not brought before a proper issuing authority until six days after his arrest;

(d) that he was not informed of the charges against him at his preliminary arraignment.

Relator's petition was listed for hearing on May 28, 1968, before the Honor-

**152**

able John J. McDevitt, III. Relator was represented by the Voluntary Defender. The court refused to dismiss the petition and held the matter under advisement. On February 20, 1969, relator's petition was again listed for consideration but was continued until further notice to obtain the notes of the hearing held in May, 1968, and also to have the testimony of the relator's trial counsel presented to the court. On May 6, 1969, a full evidentiary hearing was held at which the relator's trial counsel testified. The matter was then taken under advisement by Judge McDevitt. On November 10, 1969, Judge McDevitt filed an Order and Memorandum which denied the relator's petition.

Although this Court has determined that the conviction under the 1957 Bills is valid, the legality of the relator's present incarceration, which stems from his recommitment as a convicted parole violator, is contingent upon whether the conviction under the 1965 Bills, which resulted in the revocation of parole, was achieved in a constitutionally permissible manner. Since Judge McDevitt's determination of this question is appealable within the state court system, it would be premature for the Federal District Court to decide the question now. Accordingly, relator's petition for a Writ of Habeas Corpus, Miscellaneous No. 69–78, is denied for failure to exhaust state remedies. 28 U.S.C. § 2254.

### ORDER

And now, this 25th day of Nov., 1969, it is ordered that relator's petition No. 3827 is denied without prejudice. There is no probable ground for appeal.

It is further ordered that relator's petition No. 69–78 is denied without prejudice for failure to exhaust state remedies. There is no probable ground for appeal.