**UNITED STATES of America ex rel. Albert Leroy McCOWIN**

v.

**Mr. E. A. POWELL, Superintendent, State Correctional Institution, Huntingdon, Pa.**

**No. 1441.**

United States District Court, M. D. Pennsylvania.

July 6, 1972.

Stewart L. Kurtz, Huntingdon, Pa., for petitioner.

Samuel K. Gates, York, Pa., for respondent.

## OPINION

MUIR, District Judge.

On May 11, 1967, a jury in the Court of Quarter Sessions of York County, Pennsylvania found Albert Leroy McCowin guilty of rape. McCowin has filed in this Court a petition for a writ of habeas corpus. He seeks to have his conviction for rape voided on the grounds that the pre-trial identification proceeding and the trial judge's charge violated his constitutional rights. His petition will be denied.

In support of the motions for new trial and in arrest of judgment which he presented to the trial court, McCowin contended that the "pretrial lineup conducted in the absence of counsel was in violation of the Sixth Amendment to the

United States Constitution," that "the pretrial lineup was so suggestive and conducive to irreparable mistaken identification that he was denied due process of law," and that the "charge of the Court in commenting upon the testimony of Vivian McCowin was so prejudicial as to constitute grounds for a new trial." (Defendant's brief of November 29, 1967, at 1). The last of these three contentions is not pertinent to his present petition. The trial judge's opinion denying McCowin's motions dealt with the first two of his three contentions as follows:

"In the defendant's argument he raises the issues concerning the identification of the defendant by the victim prior to trial when he was not accompanied by his counsel. We have disposed of this contention in the opinion filed this day in the case of Com. v. Johnson." (Commonwealth v. McCowin, No. 111 January Sessions 1967, Court of Quarter Sessions of York County, January 22, 1968, at p. 2)

In *Johnson*, the trial court treated the pre-trial identification procedure as follows:

"The procedure of having a witness identify an accused in the absence of the accused's counsel and at a time when only one person was submitted for identification has been the practice throughout the nation until June 12, 1967, when the United States Supreme Court concluded that this was a denial of constitutional rights in U. S. v. Wade, [388 U.S. 218, 87 S.Ct. 1926] 18 L.Ed.2d 1149, and Gilbert v. California, [388 U.S. 263, 87 S.Ct. 1951] 18 L.Ed.2d 1178. However this does not aid the defendant here for this case was tried May 10, 1967 and the identification at the jail antedated the trial. In Stovall v. Denno, [388 U.S. 293, 87 S.Ct. 1967] 18 L.Ed.2d 1199, the U.S. Supreme Court said 'We hold that Wade and Gilbert affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence

of counsel after this date.' " (Commonwealth v. Johnson, No. 110 January Sessions, 1967, Court of Quarter Sessions of York County, January 22, 1968 at 2–3)

Although the trial court relied on *Stovall* for the proposition that *Wade* and *Gilbert* are not to be applied retroactively, it did not refer to the following passage from *Stovall* which McCowin had quoted in his brief in support of his motions in arrest of judgment and for a new trial:

"We turn now to the question whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (C.A. 4th Cir. 1966). The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ." 388 U.S. at 301–302, 87 S.Ct. at 1972 (citation omitted).

A "violation of due process of law in the conduct of a confrontation" was one of the claims McCowin presented to the trial court. It appears from the opinions referred to above that the trial Court did not decide this claim. The same claim was presented to the Superior Court of Pennsylvania on appeal and to the Supreme Court of Pennsylvania in McCowin's petition for allowance of appeal nunc pro tunc. The Superior Court affirmed his sentence without opinion and the Supreme Court denied his petition without comment. McCowin has not filed any other post-conviction petitions in the state courts.

■ McCowin is entitled to the protection of *Stovall.* United States ex rel. Trignani v. Russell, 405 F.2d 1119 (3d Cir. 1968). Because the trial, Superior and Supreme Courts each had a meaningful opportunity to rule on McCowin's assertion that the pre-trial confrontation violated his right to due process of law, he has adequately exhausted his state remedies as required by 28 U.S.C. Section 2254(b). "It is not necessary that the highest state court decide the claim on its merits." United States ex rel. Turner v. Rundle, 438 F.2d 839, 845 (3d Cir. 1971). Since a state court finding on this issue is absent from the state record, an evidentiary hearing was held in this Court. *See* United States ex rel. Choice v. Brierly, 460 F.2d 68 (3d Cir. May 19, 1972). The background to and circumstances of the pre-trial confrontation were developed at this hearing.

On the night of December 8, 1966, Barbara Brunner was walking in front of a gas station on a street well-lighted by street lamps, although otherwise unlit. A man walking towards her accosted her and forcefully caused her to accompany him to his car, which was parked behind the gas station. There he raped her. He did not beat her, and she had ample time to observe him during the slightly more than an hour she was with him. His car was not completely dark. She testified that she got "a good look" at his face then as well as when he first approached her. She also was able to observe him when, after the rape, he drove her a few blocks from the gas station towards her home, passing under street lights most of the way.

When she arrived home, Miss Brunner was hysterical. She informed her mother that she had been raped, and her mother called the police. Two city detectives came to her home to interview her. At that time, she described her assailant as a light-skinned Negro, about five feet five or six inches tall, of medium build, weighing about 130–140 pounds, wearing dark trousers, a plaid shirt and a beret-like hat.

Sometime in the next eleven days Miss Brunner was shown "mug shots" by the police. She did not pick out anyone of these in particular, but she did advise the police that one or two of these had parts of their faces similar to the corresponding parts of her assailant's face.

Eleven days after she was raped, Miss Brunner was asked by the police to come to the York City Hall to see if she could make an identification. The police told her that they thought they "had" her assailant. At City Hall she viewed petitioner McCowin, his parole officer and one or two other people through a one-way mirror. McCowin was dressed in grey trousers, a blue shirt, and a black jacket. (No one had advised him what to wear that evening.) Miss Brunner was directed to look at McCowin in particular. At that time, she unhesitatingly and positively identified him as her attacker. Upon emerging from the room in which she had made her identification through the one-way mirror, she confronted McCowin in person. She said, "That's him. He talks with his hands." She renewed her identification at McCowin's preliminary hearing and at his trial. She never identified anyone else as having raped her.

■ The identification proceeding at City Hall was clearly very suggestive. Miss Brunner knew that the police thought McCowin was her attacker, and her attention was directed to him. However, in my view the identification proceeding was not so "conducive to irreparable mistaken identification that [McCowin] . . . was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972 (1967). The Commonwealth has established "by clear and convincing evidence that the in-court identification were based upon observations of the suspect other than the lineup identification." United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939 (1967). *Wade* held that the relevant factors in making such a determination include:

". . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between

any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. at 241, 87 S.Ct. at 1940. See United States ex rel. Choice v. Brierly, supra.

The only discrepancy between Miss Brunner's pre-lineup description and McCowin's actual appearance at the time of the lineup is that he weighed 185 pounds, not 130–140 pounds. In view of the remainder of Miss Brunner's description which corresponds with his appearance then, her lengthy opportunity to observe her assailant under adequate lighting conditions, the short period of time between the crime and the identification at City Hall, the absence of any other identifications by Miss Brunner, and her unequivocal, immediate identification of McCowin, I conclude that her in-court identification was based upon observations of McCowin other than the City Hall proceeding. *Wade* supra at 240, 87 S.Ct. 1926. *See, e. g.,* Hancock v. Tollett, 447 F.2d 1323 (6th Cir. 1971).

■ Petitioner McCowin submitted one contention in support of his habeas corpus petition in addition to the alleged suggestiveness of the pretrial identification which has been discussed thus far. This second contention is that he was denied a fair and impartial trial because the "jury was precluded from considering the substances of the crime charged." He attacks the following portion of the judge's charge:

"So if you are satisfied of the truth of Barbara Brunner's testimony and the testimony of the physician beyond a reasonable doubt as corroborated in part at least by the testimony of her mother and the police officers, then you would be justified to conclude she was the victim of an assault and that she was the victim of a rape." (N.T. 67)

Petitioner's counsel did not object to this portion of the charge at trial, nor was it attacked in the brief in support of his motions in arrest of judgment and for a new trial. However, he did present his contention that this portion of the charge denied him a fair trial to the Superior and Supreme Courts of Pennsylvania. In my view, petitioner has sufficiently exhausted his state remedies as to this claim. *See* United States ex rel. Turner v. Rundle, supra.

■■ An alleged error in jury instructions is not a basis for federal habeas corpus relief unless the error was so gross that it constituted fundamental error resulting in a deprivation of due process. United States ex rel. Brown v. Rundle, 330 F.Supp. 1093 (E.D.Pa. 1971); United States ex rel. Young v. Rundle, 308 F.Supp. 147 (E.D.Pa.1969); United States ex rel. Chase v. Rundle, 266 F.Supp. 487 (M.D.Pa.1967), cert. denied 390 U.S. 928, 88 S.Ct. 865, 19 L. Ed.2d 991 (1968); *see* United States ex rel. Cannon v. Maroney, 373 F.2d 908 (3d Cir. 1967). The sentence preceding the one of which petitioner now complains was:

"One of the essential elements of rape of course is that there must be a penetration of the female sexual organ by the male sexual organ, however any penetration, however slight, is sufficient to constitute the offense of rape if it is done forcibly and against the will of the female involved."

If there is any ambiguity in the sentence of the charge to which McCowin now objects, this sentence which preceded it and a review of the charge as a whole make it perfectly plain that the trial judge did not intrude upon the jury's province as finder of the facts, and that his charge was not only not fundamentally erroneous, it was not erroneous.