**UNITED STATES of America ex rel. Ronald J. RAKSHYS, Relator,**

**v.**

**Erskind DeRAMUS, Superintendent, State Correctional Institution, Post Office Drawer R, Huntingdon, Pa., Respondent.**

**No. 1451.**

United States District Court,
M. D. Pennsylvania.

Sept. 15, 1972.

**334**

Frank E. Garrigan, Shamokin, Pa., for relator.

Patrick Toole, Dist. Atty., Ben Jones, III, Wilkes-Barre, Pa., for respondent.

## OPINION

MUIR, District Judge.

On January 17, 1968, a jury sitting in the Court of Oyer and Terminer and Quarter Sessions of Luzerne County, Pennsylvania, found petitioner Ronald J. Rakshys guilty of armed robbery. The trial court denied his motion for a new trial and in arrest of judgment. His conviction was affirmed by the Pennsylvania Superior Court *per curiam* without opinion, allocatur was denied by the Pennsylvania Supreme Court, and certiorari was denied by the Supreme Court of the United States.

On March 16, 1970, Rakshys filed a petition for post-conviction relief in the Luzerne County Courts. In that petition, he contended, *inter alia*, that he had been denied the effective assistance of counsel and that the identification testimony of the only eyewitness to the crime emanated from an impermissibly suggestive pre-trial show-up. His post-conviction petition was denied by the original trial judge. The Superior Court of Pennsylvania affirmed this denial, and the Supreme Court of Pennsyl-vania denied allowance of appeal. The instant petition for a writ of habeas corpus presents the two claims referred to above relating to the effectiveness of counsel and the identification testimony. It is clear that he has exhausted his available state remedies as to these claims. 28 U.S.C. § 2254(b); United States ex rel. Turner v. Rundle, 438 F.2d 839, 845 (3d Cir. 1971).

In its opinion in support of its denial of Rakshys' post-conviction petition, the trial court found that Rakshys was not denied the effective assistance of counsel. I find that Rakshys had a full and fair hearing on this issue and that the state court's finding is adequately supported by the record. Hence, this finding is presumed to be correct. 28 U.S.C. § 2254(d); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Petitioner's other contention. that he was denied due process of law because of a tainted in-court identification, presents significantly more difficult questions. The trial court rejected this contention and found that the in-court eyewitness identification emanated from a source independent of the pre-trial show-up.[1] This independent source was stated to be the witness's business dealings with Rakshys prior to the crime and his observations of him during the course of the crime. Because in my view the material facts necessary to make such a determination "were not adequately developed at the State court hearing,"[2] and because this inadequacy was not due to any "inexcusable neglect of petitioner,"[3] an evidentiary hearing on this question was held in this Court. *See, e. g.,* United States ex rel. Choice v. Brierley, 460 F.2d 68 (3d Cir. 1972).

On the night of April 2, 1967, a gas station in Hanover Township, Pennsylvania, was robbed by three men. The gas station attendant, Daniel Sinkiewicz,

---

1. Commonwealth v. Rakshys, Court of Common Pleas of Luzerne County—Criminal No. 1345 of 1967, May 20, 1970, at p. 2.

2. 28 U.S.C. § 2254(d)(3).

3. Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

was the only person present during the robbery aside from the robbers. The three men arrived in an automobile and pulled up next to the front door to the station. One man alighted and entered the building. Charles Grucella was found by a jury to have been this participant in the robbery. Pistol in hand, Grucella commanded Sinkiewicz to give him the money in the cash register. Sinkiewicz appearing reluctant to comply, Grucella hit him with the gun and then commenced rifling the cash register. Sinkiewicz attempted to flee through the front door whereupon he was faced with another robber who had pistol in hand and who was sitting in the front seat, passenger side, of the robbers' car. Solely on the basis of Sinkiewicz's testimony, a jury found that Rakshys was this man. I will hereinafter refer to this man as robber # 2.

Robber # 2 said to Sinkiewicz, "Stay where you are or I'll blow your head off." Sinkiewicz retreated into the station building after staring briefly at the face and gun of robber # 2. Once back in the station, Sinkiewicz occasionally over a three to five minute period observed robber # 2 through the glass walls of the station; his view was not obstructed by any posters or advertisements.

The station was well lighted; robber # 2, who did not leave the car during the robbery, was not obscured by shadows. Grucella and robber #2 were both wearing women's silk stockings over their heads. Grucella's was black; the color of robber #2's stocking was not developed at Rakshys' state trial or the hearings held before this Court. Sinkiewicz did not see the driver of the car at all. The stockings in question had runs in them, and Sinkiewicz testified that he could see the robbers' faces as clearly as if they had not been wearing the masks.

While Grucella was still rummaging through the cash register, Sinkiewicz escaped out the back door of the station. He called his employer, and his employer called the Hanover Township police.

The police arrived at the gas station, to which Sinkiewicz had returned, about 15 minutes after the robbery. Sinkiewicz was extremely agitated. He told the police what had transpired. He further stated that the car used by the robbers was a light blue 1965 Oldsmobile. His only description of the robbers was that the man who came into the station (later found to be Grucella) had a dark complexion and a moustache. According to the police report of this interview, Sinkiewicz "could not give an accurate description of the thieves."

Sinkiewicz testified that the state police interviewed him two days after the robbery. He believes he gave them a description of both robbers at that time, but does not recall how he described them. The state police, however, have no record of such an interview. According to the state police officer who was in charge of this case, the state police did not become involved until eight days after the robbery. The Hanover Township police officer who was in charge of their investigation testified that the only time members of his force interviewed Sinkiewicz was on the night of the robbery.

Within a week of the robbery, a stolen car was recovered which fitted the description Sinkiewicz had given of the robbers' car. A latent fingerprint taken from the rear view mirror was found to belong to Charles Grucella. The state police obtained a warrant for his arrest. They then received an anonymous tip as to his whereabouts. The informant stated that Grucella was with two other men and that the trio invariably carried a small case with them whenever they entered or left the house where they were staying. After maintaining a surveillance of this house through the night of April 10, 1967, the state police entered it early in the morning of April 11, 1967. They found a case with guns and stocking masks in a refrigerator. They then arrested Rakshys, Grucella, and the third man present.

These three were taken directly to the state police barracks. That same morn-

ing, Sinkiewicz was taken to the state police barracks by the Hanover Township police at the request of the state police. There is no testimony as to what Sinkiewicz was told on his way to the barracks. Upon Sinkiewicz's arrival at the barracks, the switchboard operator informed the state police officer in charge of the investigation that Sinkiewicz had arrived. This officer took Sinkiewicz to the Bureau of Criminal Identification (BCI) room, a room which measured approximately 30 feet by 50 feet. The small case containing the guns and masks was in this room in order to be processed for fingerprints. Rakshys, Grucella, and a third man were also in this room about 20 feet from the case, and were being fingerprinted and photographed.

As soon as he walked in this room, and without any prompting by the police, Sinkiewicz recognized Grucella, then Rakshys. He so advised the police, and walked over to where the three men were to take a closer look. He did not identify the third man; he had only seen two of the robbers. Sinkiewicz assumed that the guns and masks belonged to the three men being fingerprinted and photographed, but in his opinion he recognized Grucella and Rakshys because he had had ample opportunity to observe them during the crime and because about twice a week during the previous year they had purchased gasoline at the gas station.

■ Sinkiewicz's opinion of the source of his identification testimony may properly be considered in assessing petitioner's claim. Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1242 (1968). Sinkiewicz's view that he based his identification in part on having seen Rakshys and Grucella prior to the crime must be evaluated in the following context. He did not advise the police on the night of the robbery that he recognized two of the robbers as customers. It has not been established whether he did so inform them at any time prior to April 11, 1967, when he

saw Rakshys and Grucella at the police barracks. In particular, there is, as noted above, a conflict in the testimony as to whether Sinkiewicz spoke at all with any police officers at any time after the night of the robbery but prior to April 11, 1967. Sinkiewicz testified that he was interviewed during this period, but could not recall whether he told the police at that time that he recognized Rakshys and Grucella. This state of the record will be discussed further below.

While the state police may not have deliberately arranged to have Sinkiewicz view Rakshys in the process of being fingerprinted and photographed in the same room in which the seized guns and masks were located, they must be held responsible for this confrontation because they could and should have avoided it.

The fundamental issue in this case is whether, judged by the "totality of the circumstances," the confrontation at the police barracks between Sinkiewicz and Rakshys was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to have denied Rakshys due process of law. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); United States ex rel. Choice v. Brierley, 460 F.2d 68, 72 (3d Cir. 1972). See Simmons v. United States, 390 U.S. 377, 383, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968). There is no claim that petitioner was entitled to counsel at the barracks and no such claim could succeed. The confrontation, even were it to be considered a lineup, took place prior to the effective date of Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). See Stovall, supra. Furthermore, Rakshys had not yet been formally arraigned or indicted, so that he would not be entitled to counsel even if the proceeding had been post-Wade. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Stovall, on the other hand, does apply here even though the confrontation occurred prior to that deci-

sion. United States ex rel. Trignani v. Russell, 405 F.2d 1119 (3d Cir. 1968).

The factors to be applied in deciding the fundamental *Stovall* issue are:

"(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the . . . identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification. See United States v. Zeiler, 447 F.2d 993, 995 (3d Cir. 1971); United States v. Higgins, 458 F.2d 461 (3d Cir. filed March 28, 1972)." United States ex rel. Choice v. Brierley, 460 F.2d 68, 72–73 (3d Cir. 1972). See also United States ex rel. Schartner v. Pizzo, 336 F.Supp. 1192 (M.D. Pa.1972); United States ex rel. McGowin v. Powell, 345 F.Supp. 149 (M. D.Pa. filed July 6, 1972); *Wade,* supra, 388 U.S. at 241, 87 S.Ct. 1926. This Court assumes that the second factor just referred to, which is also mentioned in *Wade,* is meant to include the witness' opportunity to observe the criminal during the crime.

Sinkiewicz had several minutes during the course of the robbery to observe Rakshys under adequate lighting conditions at a distance of several feet. Although Rakshys' face would have been somewhat distorted by the stocking mask he wore, this did not significantly impair Sinkiewicz's ability to see his face. Nor did Sinkiewicz's agitation impede his ability to observe the robbers.

The pretrial confrontation at the barracks nine days after the robbery was, in my view, only slightly suggestive. There were two elements of suggestiveness. First, Sinkiewicz assumed that the men being processed were connected with the guns and masks, although when he made this assumption is not clear. Second, Sinkiewicz recognized Grucella as the robber who had hit him and whom Sinkiewicz had had greater opportunity to observe during the robbery before he recognized Rakshys. It is possible that Sinkiewicz connected Rakshys with Grucella since they were both being processed together in the room with the guns and masks. (There is no evidence of the appearance of the third man who was being processed along with these two and who was not identified by Sinkiewicz).

The police did not bring about a face to face confrontation, ask Sinkiewicz to take a look at Rakshys, or ask Sinkiewicz if he could identify him. They did not point out the men being fingerprinted and photographed as suspects in this case. Sinkiewicz's recognition of Rakshys and Grucella was immediate and unequivocal.

There is no evidence of any description Sinkiewicz may have given the police prior to April 11, 1967.

Sinkiewicz was not called upon to attempt to identify anyone at any time before the barracks confrontation.

In addition to pointing out the two elements of suggestiveness just referred to, petitioner asserts that the lack of reliability of the identification is indicated by the fact that, as mentioned above, there is no evidence that Sinkiewicz notified the police prior to the confrontation that he recognized Rakshys and Grucella as customers. A second hearing in this court was held specifically to illuminate this issue, but it remains lutulent. In the present state of the record it must be concluded that Rakshys has sustained his burden of proving that it is more likely than not that Sinkiewicz did not notify the police of any such recognition. However, he has not proven that Sinkiewicz was interviewed after the night of the robbery and prior to the confrontation, yet failed to notify the police that the robbers were customers.

Sinkiewicz's failure to inform the police of any such recognition when he was briefly interviewed the night of the robbery is not surprising in light of the fact that he was very upset. Although his failure to act during the ensuing eight days is puzzling, it does not necessarily follow that his identification was unreliable. Sinkiewicz did not know Rakshys or Grucella well, or by name. Perhaps he took no initiative here because he did not realize that this information would be valuable to the police, thinking that it would merely indicate that the two were living in the general area. Perhaps he did not realize that the two were former customers until he saw them again at the barracks. The issue would then be whether the barracks confrontation was a catalyst to or an ingredient of his recognition. The possibility that Sinkiewicz upon entering the BCI room confused recognition of Rakshys, a former customer, with recognition of one of the robbers, cannot be ignored. The question is how much weight this possibility deserves, given all the evidence before the Court.

■ In my view, the totality of the circumstances does not show that the barracks confrontation was so conducive to irreparable mistaken identification as to deny Rakshys due process of law. The barracks confrontation was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See *Simmons*, supra, 390 U.S. at 384, 88 S.Ct. 967. Petitioner's objections are substantial but are outweighed by the factors which indicate that the in-court identification was reliable. This is an extremely close case and for that reason I am certifying that there is probable cause for an appeal.

An order in accordance with this opinion denying Rakshys' petition for a writ of habeas corpus will be entered.

This opinion constitutes the findings of fact and conclusions of law of this Court.