UNITED STATES of America ex rel.
Anthony TRIGNANI, Appellant,

v.

H. E. RUSSELL, Appellee.

No. 17193.

United States Court of Appeals
Third Circuit.

Argued Oct. 8, 1968.

Decided Dec. 20, 1968.

John Rogers Carroll, Philadelphia, Pa.,
for appellant.

Paul R. Michel, Asst. Dist. Atty.,
Philadelphia, Pa., for appellee (Welsh S.
White, Asst. Dist. Atty., James D. Craw-
ford, Asst. Dist. Atty., Chief, Appeals
Div., Richard A. Sprague, First Asst.
Dist. Atty., Arlen Specter, Dist. Atty.,
Philadelphia, Pa., on the brief).

Before McLAUGHLIN, STALEY and
VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal challenges a July 3, 1967,
District Court order denying a petition
for a writ of habeas corpus without
hearing. Relator contends that his con-
frontation and identification by the vic-
tim of a shooting (incident to robbery) [1]
in such victim's hospital room a few days
subsequent to the crime, after a detective
stated "this is the man who robbed you,"
caused his identification by such victim
at the trial to be a violation of due proc-
ess of law under the totality of the cir-
cumstances. The Supreme Court of the
United States has stated the applicable
rule as follows in Stovall v. Denno, 388
U.S. 293, 301–302, 87 S.Ct. 1967, 1972,
18 L.Ed.2d 1199 (1967):

"We turn now to the question wheth-
er petitioner * * * is entitled to
relief on his claim that in any event
the confrontation conducted in this
case was so unnecessarily suggestive
and conducive to irreparable mistaken
identification that he was denied due
process of law. This is a recognized

---

1. The factual background of the crime is
set forth in Commonwealth v. Trignani,
185 Pa.Super. 332, 138 A.2d 215 (1958),
aff'd. 393 Pa. 140, 142 A.2d 160 (1958).
The crime took place at about 12:30
P.M. on 11/25/55 as the victim was re-

turning from the bank with a briefcase
containing a payroll of over $10,000.
A previous petition for a writ of habeas
corpus was denied by the District Court
in United States ex rel. Trignani v. My-
ers, 224 F.Supp. 6 (E.D.Pa.1963).

ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (C.A. 4th Cir. 1966). The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *."

See Simmons v. United States, 390 U.S. 377, 382–383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States ex rel. Bennett v. Myers, 381 F.2d 814 (3rd Cir. 1967).

At his trial in April 1956, relator's testimony contained no reference to any identification by the victim at the hospital after the police secured custody of him on December 2, 1955.[2] In May 1965, relator alleged at page 2 of a petition for a writ of habeas corpus filed in the State Court (Comm. ex rel. Trignani v. Myers, C. P. #7, Phila., Pa., March Term 1965, No. 6723) that he surrendered himself to the police on December 2, 1955, in the presence of privately retained counsel, after learning that the police were looking for him, that he was forcibly taken to the hospital for identification by the victim, and "That immediately prior to his being forced to appear for a viewing by the victim, petitioner made specific and repeated requests to police officers he be permitted to consult with counsel as to his right of invoking the privileges of the Fifth Amendment."[3]

At the hearing on this State Court petition, relator testified that he was surrendered at City Hall by his retained counsel, who left but told him to make no statements. Before he was taken to the hospital, he made a request that his retained counsel accompany him, which was refused. Upon stating that he would not go to the hospital without his lawyer, he was forcibly taken there in handcuffs. Despite his repeated requests for counsel, relator was made to wear certain clothes and then taken into the victim's room. At the bedside, a detective stated "this is the man," at which point the victim identified Trignani.[4]

---

2. Relator had been identified by witnesses other than the victim in a lineup before he was taken to the hospital for the confrontation with the victim. One of the police officers who accompanied him to the hospital testified:

"We took him into the room where the complainant was, and he hollered at this fellow, he wanted to get him. He wanted to get out of bed.

* * * * *

"Mr. Anzelone hollered, 'that is him. That is him. Let me at him,' and he was restrained in bed, Mr. Anzelone was. Then we took this man from the room." (N.T. 157)

A detective placed the hospital confrontation after 8 P.M. on 12/2/55. The victim stated that he had identified relator in the hospital, but that he did not think the police had talked to him or showed him pictures. A detective testified that he showed pictures to Anzelone, who was unable to identify any because he was "incoherent" at the time. Several police officers testified that the victim was incoherent and that the police were not allowed to talk to him or take a statement from him during the days immediately following the robbery. Counsel concede that the hospital identification was prior to the indictment of January 6, 1956.

3. Paragraphs E and F on pages 2–3 of this petition contained this language:

"(E) Notwithstanding police refusal permitting petitioner to consult with counsel, the action itself of forcibly transporting petitioner from detention to the Community Hospital, without notifying counsel was a deliberate action on part of the police denying petitioner, his right of assistance of counsel.

"(F) The instant case is four square with a recent decision by the United States Court of Appeals for the 2nd Circuit—vacating the judgment of a New York murder conviction—the defendant was forcibly taken to a hospital for a viewing of one of the victims. The high court held defendant should have been advised of his right to counsel at this critical stage of the proceedings."

4. No witness at the trial testified that anyone said in the victim's presence at the hospital "this is the man who robbed you," or made any similar statement.

The State Court did not pass on the propriety or effect of the bedside confrontation and denied the petition on these grounds:

"Assuming, arguendo, that the police methods were improper in obtaining the identification, the subsequent independent identification certainly would remove the hospital proceedings from the critical stage.

"In any event, the effect of the hospital identification upon the one at trial goes to the credibility of the evidence and is a matter for appeal. Habeas corpus is never a substitute for appeal. Commonwealth ex rel. Whalen v. Banmiller, 193 Pa.Super. 554 [165 A.2d 421] (1960).

"Accordingly, petitioner's writ for habeas corpus is denied." [Opinion of 12/1/65 in Commonwealth ex rel. Trignani v. Myers, supra, aff'd. 207 Pa.Super. 745, 216 A.2d 119 (1966), allocatur refused 208 Pa.Super. XLVI (Pa. Supreme Ct. 1966).]

The foregoing language indicates that the State Court believed that the later identification by the victim at the trial made the alleged hospital identification following the detective's statement immaterial.[5] However, the Supreme Court of the United States has stated that if the initial confrontation is illegal, it must be shown that the trial identification has not resulted from, and has been "purged of, the primary taint." See United States v. Wade, 388 U.S. 218, 241, 87 S. Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967), where the court said:

"Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

Even assuming the State Court opinion can be construed as a finding that the trial identification did not result from, and was purged of, "any taint" in the hospital confrontation, 28 U.S.C. § 2254 (d) provides that relator is entitled to an opportunity to establish that the merits were not resolved at the state court hearing or that the material facts were not adequately developed there.[6] Ap-

Pages 4-5 of relator's petition in the District Court contain this language:
"Officer Leon Pitts * * * [went] to prepare the victim at the hospital for the viewing, well aware relators soon arrival—upon entering the hospital bedside, officer 'Pitts' was already there (Page N.T. 122) showing victim pictures of relator to the victim.
"Officer Pitt—stated 'this is the man who robbed you.'
"Relator was told to repeat 'give me the bag'. These are the words used by the robber (N.T. 7).
"* * * The critical stage in pretrial proceedings were the hospital identification at a time when relator was purposely forced against his will to go to the hospital to be identified and without his lawyer to question or to impeach the accuser's identification via the power of suggestion by a police officer who stated 'this is the man who robbed you.' "

5. There is ample evidence to support a finding that the trial identification of the relator by the victim had its source in the robbery itself. Three witnesses other than the victim identified relator at the trial, and they testified that they had previously identified him at a lineup.

6. Although this section makes a written determination by the State Court of a factual issue after hearing presumptively

pellant was not granted an opportunity in the District Court to show the totality of the circumstances and no determination of his due process claim in the light of the *Stovall* and *Wade* cases, supra, was made. Under these circumstances, this language of the court in *Wade,* supra, at page 242, 87 S.Ct. at page 1940, requires the District Court to grant relator a hearing in view of this record:[7]

"On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. This was not an issue at trial, although there is some evidence relevant to a determination. That inquiry is most properly made in the District Court. We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error, Chapman v. California, 386 U.S. 18, [87 S.Ct. 824, 17 L.Ed.2d 705] and for the District Court to reinstate the conviction or order a new trial, as may be proper."

The District Court is the proper forum to determine such issues as whether (1) a conscious hospital identification took place,[8] (2) such confrontation was tainted,[9] and (3) such taint, if established, was the source of the in-court identification. For the foregoing reasons, the July 3, 1967, order of the District Court will be vacated and the case remanded to the District Court for fur-

correct, this presumption only applies "unless the applicant shall establish or it shall otherwise appear, * * *

"(1) that the merits of the factual dispute were not resolved in the State court hearing;

"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

"(3) that the material facts were not adequately developed at the State court hearing; * * *."

7. Although the hearing to be held in the District Court may establish the waiver claimed by appellee which relies on Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1967), this record is not sufficient to determine whether relator " 'after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures * * *.' Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837." (379 U.S. at 450, 85 S.Ct. at 569). The alleged statement by relator's counsel "to the effect that it wouldn't pay to bring it out because it would just confuse things * * *." does not establish the understanding and knowing waiver by relator contemplated by the above-quoted language.

8. As pointed out in footnote 2, the victim may have been incoherent, delirious, and not in possession of all his faculties during the hospital confrontation.

9. Although appellee's brief apparently emphasizes that the confrontation in the hospital was prior to the indictment in this case, whereas it was after the indictment in *Wade,* we agree with the following statement of the Court of Appeals for the Fifth Circuit in Rivers v. United States, 400 F.2d 935 (opinion of 9/16/68): "With *Miranda* on the books, it is indisputable that most, perhaps all, confrontations occurring after arrest will fall within the rules announced in *Wade* and *Gilbert.* We recognize the risk of ever letting a dissenter speak momentarily for the Court as to what it has really held, but Mr. Justice White, dissenting in *Wade* said 'the rule applies to any lineup, to any other techniques employed to produce an identification and a fortiori to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place, and whether before or after indictment or information."

Therefore, we cannot hold on this record that the time of this hospital confrontation makes the principle stated in *Stovall,* as quoted above, inapplicable.

ther proceedings consistent with this opinion.

STALEY, Circuit Judge (dissenting):

I repectfully dissent. In my opinion, the totality of the circumstances in this case does not warrant the granting of another hearing to relator because, in my view, relator's due process claim concerning the alleged tainted hospital identification was considered and decided adversely to relator at his state court habeas corpus hearing.

Concededly, the state court did not have the benefit of the guidelines announced by the Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967), but a reading of its opinion indicates to me that it must have considered those factors deemed relevant by the Supreme Court in its *Wade* and *Stovall* decisions. As can be seen from its opinion, the state court quite clearly considered the possibility that the police might have improperly obtained relator's identification at the hospital, and yet it found that there was an "independent identification" by the victim of relator at the trial. To me, implicit in this finding is the determination that the trial identification was independent of, and did not result from, any impropriety that might have occurred at the hospital. And, as noted by the majority at footnote 5, there is indeed ample evidence in the trial record to support a finding that the trial identification had its etiology in the robbery itself rather than in the hospital confrontation.

When the state court's finding is viewed in the context of the trial identifications of relator by three witnesses, other than the victim, who had previously identified relator at a lineup, and the fact that the victim undoubtedly viewed his assailant when he was shot at point-blank range and then gave chase, I think the record before us does not permit of another hearing under either 28 U.S.C. § 2254(d) or the decisional law.

Accordingly, I would affirm.