UNITED STATES of America ex rel.
Mackey Raymond CHOICE,
Appellant,

v.

Joseph R. BRIERLEY, Superintendent
and District Attorney of Philadelphia County.

No. 71–1317.

United States Court of Appeals,
Third Circuit.

Argued Feb. 17, 1972.

Decided May 19, 1972.

Francis S. Wright, Jr., Defender Assn. of Philadelphia, Philadelphia, Pa., for appellant.

Mark Sendrow, Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Div., James D. Crawford, Deputy Dist. Atty. for Law, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., for appellee.

Before ADAMS, GIBBONS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

More than $38,000, was stolen from the Citizens and Southern Bank of Philadelphia on September 22, 1965. Appellant Mackey Choice was arrested for the theft, and was indicted on counts of aggravated robbery, burglary, and conspiracy. His trial before the Quarter Sessions Court of Pennsylvania resulted in his conviction on June 22, 1966 on all three counts.[1] A ten to twenty year sentence was imposed for the robbery charge and a twenty year probation period, for the burglary charge. Sentence for the conspiracy conviction was suspended.

Choice pursued his state remedies, but was unsuccessful in obtaining relief from the Pennsylvania courts. On June 1, 1970, having satisfied the requirements of 28 U.S.C. § 2254(b), Choice applied to the district court for a writ of habeas corpus.[2] The district judge de-

---

1. Choice's first trial, held on December 13–15, 1965, concluded in a hung jury.

2. The claims raised on the habeas petition were presented to the Superior Court of

nied him a 28 U.S.C. § 2254 evidentiary hearing and dismissed the petition. Choice now appeals.

■ His habeas petition sets forth two due process claims. The first contention is that "the indirect introduction of Mackey Choice's prior criminal record at his trial denied him due process of law." More specifically, the appellant alleges that he was denied a fair trial because the government was allowed to establish that he was arrested at the parole board.

In order to see this claim in the proper light, it is necessary to illuminate the circumstances under which the reference to the parole board was elicited by the government: The fact that Choice was arrested at the parole board was not established during the district attorney's direct examination of the arresting officer. On cross-examination of the officer, in an attempt to convince the jury that it was not Choice who had robbed the bank of the $38,000, the defense proved that Choice had only $2.00 on his person when he was arrested. Then, in order to rebut the exculpatory inference the jury might draw from this testimony, the government established on redi-

rect that Choice had been arrested at the parole board.[3]

The redirect examination only brought out Choice's presence at the parole board. Neither the fact that he was on parole at the time, nor the fact that he had been arrested seven times previously was called to the jury's attention. Cf. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) and United States ex rel. Scoleri v. Banmiller, 310 F.2d 720, 725 (3d Cir. 1967). Despite the context of the remark and its limited scope, Choice now claims that the jury's exposure to the fact that he was at the parole board is reversible error.

■ In his brief, the appellant concedes that "mere evidentiary errors by a state trial court in the exercise of its jurisdiction cannot be reviewed by federal habeas corpus; federal courts will intervene only where the accused's basic and fundamental constitutional rights have been abridged." This is an accurate statement of the law. A federal habeas corpus proceeding will not review errors in a state court trial unless the errors were so prejudicial as to deprive the defendant of a fair trial or constitute a de-

Pennsylvania. Two of the judges on that court filed an opinion agreeing with both of Choice's claims, but the majority affirmed the conviction in a one sentence *per curiam* opinion dated November 21, 1967. Commonwealth v. Choice, 211 Pa. Super. 176, 235 A.2d 173. Choice's petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on April 30, 1968.

On May 16, 1968, Choice sought post-conviction relief in the Pennsylvania Quarter Sessions Court. On October 30, 1968 he filed his first petition for writ of habeas corpus in the United States District Court which was dismissed on December 12, 1968 because the state post-conviction relief was still pending. Finally on June 1, 1970, after state post-conviction relief had been denied by the trial judge, Choice applied for a second writ of habeas corpus. This time the district judge passed on the merits of the petition and, albeit without an evidentiary hearing, denied the writ. It is from the district court's denial of the second petition that the present appeal is now taken.

3. The cross-examination of the officer who arrested Choice brought out that Choice had "about two dollars" on his person when he was arrested "twelve days after the robbery." (Tr. p. 95) On redirect, the government asked the officer where the arrest occurred. The defense attorney objected and asked for a side bar.

At the side bar, the government explained the appropriateness of the question as follows:

"[Mr. Choice's lawyer] has implied from the way he asked the previous question that the defendant had no money on his person at the time he was arrested and, therefore, the implication is that he did not commit the robbery. I wish to show he was arrested at the Parole Board and, very clearly, if the defendant had committed this robbery, that he would not have been so fool hardy as to take with him to the Parole Board large sums of money which would have implicated him in this crime. I think * * * [Choice's lawyer] has plainly opened the door and he now wants to have his cake and eat it too."

nial of due process. United States ex rel. Cannon v. Maroney, 373 F.2d 908, 910 (3d Cir. 1967); United States ex rel. Watson v. Yeager, 458 F.2d 23 (3d Cir. filed March 28, 1972).

■ Even though appellant acknowledges that this is the law, he directs our attention to the Pennsylvania cases of Commonwealth v. Trowery, 211 Pa.Super. 171, 235 A.2d 171 (1967), Commonwealth v. Allen, 212 Pa.Super. 314, 242 A.2d 901 (1968), and Commonwealth v. Bruno, 215 Pa.Super. 407, 258 A.2d 666 (1969) and asks us to reverse the state conviction on their holdings. This we decline to do. These cases do not elucidate the contours of due process, but merely involve a principle of Pennsylvania's law of evidence; a federal court in a habeas petition would normally not pass on such matters. Furthermore, the rule enunciated in these cases was deemed inapplicable to the facts here by the Pennsylvania Superior Court when it affirmed Choice's conviction. Commonwealth v. Choice, 211 Pa.Super. 176, 235 A.2d 173 (1967).

This brings us to the central question: did the admission of Choice's place of arrest deny him due process of law? The foundation for the appellant's claim that he was denied due process is the Supreme Court's comment in Michelson v. United States, supra, 335 U.S. pp. 475, 476, 69 S.Ct. p. 218 that courts "have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt."[4] Even assuming that the mention of Choice's presence at the parole board may have suggested a prior conviction to the jury and thus "evil character." Michelson does not support the appellant's contention.

■ In determining the admissibility of evidence, the circumstances surrounding the introduction of the testimony and the purposes for which it is sought to be introduced are critical. What may not be admissible in one situation, may well be admissible in another. As we said in United States v. Stirone, 262 F. 2d 571, 576 (3d Cir. 1959) and reiterated in United States v. Carter, 401 F.2d 748 (3d Cir. 1968):

"the general rule, as stated by most courts, is that evidence of other offenses is inadmissible in a criminal prosecution for a particular crime. This rule is qualified by a number of exceptions stated in terms of the capacity of the evidence to prove some specific fact or issue such as intent, plan, scheme or design [citations omitted]. But since the range of relevancy, other than for the purpose of showing criminal propensity, is almost infinite, we think the rule may be phrased a little less mechanically. Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime."

Michelson refers to evidence introduced for the purpose of showing the defendant's evil character and of leading the jury to infer that the defendant was guilty of a particular crime. The language quoted from Michelson condemns such use. Choice does not fall within the ambit of Michelson, however, for any remote implication that Choice had a prior criminal record was not introduced to show evil character. Cf. also United States ex rel. Scoleri v. Banmiller, supra. Choice's presence at the parole board was introduced for the purpose of dispelling an exculpating implication the defendant implanted in the minds of the jurors during his cross-examination of the arresting officer. The defendant opened up the question of the circumstances surrounding his arrest. He can not now claim that it was unfair to allow the government to develop those circumstances further in its attempt to show the jury the complete picture of the events relied upon by the defendant. In short, the reference to the parole board came into evidence on rebuttal as

4. This comment from Michelson is dicta.

part of the natural development of the case. Accordingly, its admission did not deny Choice due process of law. United States v. Walker, 421 F.2d 1298, 1299 (3d Cir. 1970) cert. denied 399 U.S. 931, 90 S.Ct. 2261, 26 L.Ed.2d 799 (1970).[5]

In his habeas petition, the appellant has set forth an additional and more substantial claim. Citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), petitioner contends that the "circumstances surrounding the station house identification of Mackey Choice were so unnecessarily suggestive and conducive to irreparable mistaken identification" that subsequent in-court identification by those present at it denied him due process of law. He argues further that in the circumstances of this case he is entitled to a reversal under Stovall or an evidentiary hearing at which he could prove the facts crucial to the Stovall claim.

Choice was tried in 1966, a year prior to the decision in Stovall. His conviction was based on the in-court identification by Alexander Johnson, the head bank teller and Lorraine Custis, another teller.[6] Both were eye witnesses to the robbery. Each had been shown an array of photographs on the day of the robbery and prior to Choice's arrest. In addition, the two tellers had simultaneously participated in a show-up held a "few weeks" after the hold-up.

At trial the appellant tried to challenge the credibility of the eye witnesses by making reference to their prior identifications. He did not attack the admissibility of in-court identification, because at that time the prevailing rule was that "the manner of an extra-judicial identification affects only the weight, not the admissibility of identification testimony at trial." Simmons v. United States, 390 U.S. 377 at p. 382, 88 S.Ct. 967 at p. 970, 19 L.Ed.2d 1247 (1968). The appellant, therefore, had no hearing at which he could challenge the admissibility of the in-court identification and it was left to the jury to pass on the credibility of the witnesses.

The practice of leaving the reliability and credibility of identification evidence to the jury was repudiated by Stovall. Under the mandate of Stovall, a judge is required to make his own inquiry into the manner of the out-of-court identification. The test is whether the in-court identification the government seeks to introduce is based on the witness' recollection of the crime or whether it is the product of suggestion instilled during the course of the pre-trial investigation. Only if his evaluation of the testimony convinces him that the out-of-court identification by a witness was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it denied the defendant due process, can he permit subsequent in-court identification by that witness to reach the jury. Choice is entitled to the protection of Stovall. United States ex rel. Trignani v. Russell, 405 F.2d 1119 (3d Cir. 1968).

Stovall calls for a consideration of the out-of-court identification in terms of the "totality of the circumstances surrounding it." The factors which the district court must consider in applying the Stovall standard coincide with those applicable to a Wade or Simmons situation: (1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occa-

5. See also 98 C.J.S. Witnesses § 422 p. 232: "It is proper on redirect examination to bring out the circumstances surrounding a transaction or occurrence, or the making of a statement brought out on cross-examination."

6. The $38,000 stolen from the bank was never recovered.

sion; and (7) the lapse of time between the alleged act and the out-of-court identification. See United States v. Zeiler, 447 F.2d 993, 995 (3d Cir. 1971), United States v. Higgins, 458 F.2d 461 (3d Cir. filed March 28, 1972).

 Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) held that "[w]here the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court."[7] Since, as our examination of the record discloses, (1) the facts crucial to appellant's *Stovall* claim are in dispute and (2) the appellant did not receive a "full and fair" hearing in the state court, there should be an evidentiary hearing in the district court.

The facts crucial to the *Stovall* claim are those bearing on the seven factors enumerated above. Several of these are in controversy. For example, there is a conflict concerning what transpired when the photographic array was shown to Johnson on the day of the robbery.[8] Choice now contends, based on testimony by his private investigator at the state court trial, that the photographic identification was tainted. "[Johnson] told me that right after the robbery he notified the police and the police did come to the bank and that a detective showed him 6 or 8 police photographs. Out of that 6 or 8 he picked 3 that looked like the person that had been with him in the vault in the bank."[9] The state's version, based on testimony of the arresting police officer, differs. The officer stated on direct examination that on the day of the robbery he went to the bank which had been robbed and questioned Mr. Johnson. He explained that he had "about ten" photos which he handed to Mr. Johnson. "He started to look through. About one-third of the way through he stopped and held up the picture of Mackey Choice and said, 'this is the man [sic] did the robbery.' "[10]

 There is also a dispute arising out of the preliminary hearing held on October 11, 12, 1965.[11] At the preliminary hearing, the witnesses said that Choice "resembled" or "looks like the man" but did not make a positive identification of him. At trial the witnesses said that they had equivocated because they had been "afraid" of Choice during the preliminary hearing. If the witnesses had been afraid at that hearing, their prior nonidentification would be mitigated to some extent by their fear. Nonetheless, it was premature for the district judge who dismissed the habeas petition to accept this explanation prior to giving himself an opportunity to observe the witnesses and make his own judgment of their credibility on the basis of their demeanor.

There are other important questions requiring clarification which should be explored at the evidentiary hearing. The show-up described in the state appellate opinion deserves consideration: "[W]hile appellant was being questioned at police headquarters the two witnesses were brought into the interrogation room and observed a portion of the interrogation. Appellant was then ordered to stand up, turn around and face the witnesses who were then asked: 'Is this the one?' Appellant was, at that time, the only possible suspect in the room."[12]

---

7. A similar standard is set forth in 28 U.S.C. § 2254(d), which codifies Townsend v. Sain.

8. This affects criteria four, five, and possibly six.

9. Tr. p. 127.

10. Tr. p. 103.

11. This bears on criteria six.

12. This is taken from the dissenting opinion by Judge Hoffman. Contrast this treatment with the one line affirmance by the majority of the Superior Court of Pennsylvania. The Judge's statement of the facts, supported by the testimony of government witness Johnson, (Tr. p. 19) bears on criteria one.

In summary, then, the two requirements of *Townsend* are present. First, there is a factual dispute. Second, since Choice had a pre-*Stovall* trial, he did not receive a full and adequate hearing in the state court.

Our conclusion requiring a hearing is supported by this court's decision in *Trignani, supra.* In that case, the relator had been tried in the Pennsylvania courts prior to *Stovall.* After exhausting his state remedies, the petitioner filed for a writ of habeas corpus. Citing *Stovall,* he alleged that his out-of-court identification through a show-up had been so suggestive that the subsequent in-court identification by the same witness should not have been permitted. The district court denied the petition without a hearing, and this court speaking through Judge Van Dusen remanded for a hearing:

"Appellant was not granted an opportunity in the District Court to show the totality of the circumstances and no determination of the due process claim in the light of the *Stovall* and *Wade* cases, *supra,* was made. Under these circumstances, this language of the court in *Wade* [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149], *supra* at p. 242 [87 S. Ct. at page 1940], requires the District Court to grant relator a hearing in view of this record:

On the record now before us, we can not make the determination whether the in-court identification had an independent origin. This was not an issue at trial, although there is some evidence relevant to a determination. That inquiry is most properly made in the District Court. We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent

source, * * *'" (405 F.2d pp. 1121–1122).

For the foregoing reasons, the case will be remanded to the District Court for an evidentiary hearing consistent with this opinion.

ADAMS, Circuit Judge (concurring).

In my dissenting opinion in United States ex rel. Gockley v. Myers, 450 F.2d 232 (3d Cir. 1971), I expressed serious doubt regarding the role that has been accorded in recent years to the writ of habeas corpus in the administration of criminal justice, particularly in connection with state criminal proceedings. *See, id.,* at 253. That concern is in no way diminished by my joining with the majority today. Rather, this case falls within the ambit of the writ carefully delineated by Congress in setting forth the admonition to "dispose of the matter as law and justice require." 28 U.S.C. § 2243 (1970).

Here, the evidence at trial and the allegations in the petition, if true, raise the possibility that the conviction may have been the result of "violence to our minimum standards of fair treatment," 450 F.2d at 253, which should form the prerequisite to obtaining the relief requested. The factors compelling such conclusion in this case are, in my mind, important enough to merit a separate, though brief, exposition.

Mackey Choice's conviction was based solely on the eyewitness testimony of two of the four tellers who were in the bank when it was robbed.[1] Both tellers testified that they had only limited opportunities to see the perpetrator of the crime, and one teller testified that he based his in-court identification in part upon the photographs shown to him. Furthermore, both witnesses admitted that they had, during a hearing before the magistrate, lied under oath regarding their identifications of Choice. Be-

---

1. At the time of the trial, the police had not recovered any of the stolen money. Nor had they discovered, despite a search of Choice's home, the clothes worn by the robber, the gun which the robber indicated he possessed, or the identity of the robber's accomplice.

cause of the manner in which the case developed, reference in the record to the stationhouse confrontation was somewhat oblique and elliptical.[2] Since the validity of the identification was the crucial, indeed the sole, factual issue before the jury which convicted Choice, due process requires no less than that the in-court identifications be free from impermissible suggestion. The record developed during Choice's two trials is scant with regard to the determinative facts, and accordingly, the district court should have the advantage of an evidentiary hearing before deciding the due process question.

---

2. Mr. Choice never testified, and the testimony of the police officers and tellers was limited to avoid prejudice and hearsay problems.