GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

EFRAIN ALEJANDRO, JESUS SANTIAGO and
MIGUEL COLON, Defendants

Crim. No. 1974-81

District Court of the Virgin Islands

Div. of St. Croix

November 13, 1974

TRESTON MOORE, ESQ., Assistant Federal Public Defender, Christiansted, St. Croix, V.I., *for defendant Efrain Alejandro*

EDGAR D. ROSS, ESQ., Christiansted, St. Croix, V.I., *for defendant Jesus Santiago*

LEROY A. MERCER, ESQ., Christiansted, St. Croix, V.I., *for defendant Miguel Colon*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

At a pre-trial suppression hearing held in this Court on

November 6, defendants sought to suppress as evidence at trial two statements (one verbal, the other written) made by defendant Santiago, a .38 caliber revolver, and a station house show-up identification made of Alejandro by witness James Hurd. Although he was represented by counsel, defendant Santiago was not present at the hearing. In view of the report by the Probation Officer that defendant Santiago had violated the terms of his pre-trial release and that he apparently had left the Island of St. Croix, I declared his absence to be voluntary and proceeded with the hearing, reserving to Santiago, however, the right to a voir dire re-examination of all witnesses if Santiago appeared at trial and if his counsel deemed such re-examination necessary. Two days later, Santiago appeared with counsel before me and, at that time, indicated that he did not wish to call or recall any witnesses in connection with the suppression of evidence. This position was re-affirmed this morning, just prior to trial.

At the suppression hearing, Mr. James Hurd (herein "Hurd") testified that at approximately 1:00 a.m. on August 14, he was awakened by a gunshot, a signal which he and his neighbor Jose Soto had pre-arranged in case of trouble. Having gone outside, Hurd proceeded in his pick-up truck to Soto's house and spotted a red car with a black top on the road near Soto's home. He maneuvered his truck to partially block the transit of the red and black car so that he could get a close look at the driver. He then eased forward, passing behind the car and noting its license number. Hurd saw three men inside the car. Although there were no street lights in the immediate area, the glow from the headlights of the vehicles and the glow from the flood lights on Soto's house provided sufficient illumination for Hurd to get a good look at the driver of the car, whom he noted had dark hair, light skin, a dark full beard, and appeared to be Puerto Rican. As to the other two occupants of

61

the red and black vehicle, Hurd could see only their outlines. The individual in the back seat, however, appeared to have an Afro-style haircut. Hurd noted that he faced the driver of the car a couple of feet away for a period of two to three seconds. When the police thereafter arrived on the scene Hurd gave the officers the license number of the car, the direction in which the three had gone, and the above description of the driver of the car.

■ After seeing Soto off to the hospital, Hurd accompanied the police officers to the Frederiksted Police Station to make a statement regarding what he had seen. Shortly after his arrival, at about 3:00 a.m., three Puerto Rican youths were ushered into the station house by several police officers. Forthwith, at sight and without being asked, Hurd identified Alejandro as the driver of the black and red car. Despite the fact that the identification was spontaneous and completely unsolicited by any of the officers present, there is ample evidence in the record to establish that the confrontation was somewhat suggestive. Hurd testified that at approximately 2:00 a.m., he overheard a police transmission to the effect that three individuals were apprehended in a red and black car similar to the one he had described to the police. On cross-examination, Hurd candidly admitted that when the three youths accompanied by police officers arrived at the station house he assumed that the three were suspects in the case.

There is some conflict in the testimony as to whether the three youths were handcuffed when they arrived at police headquarters. Officers McBean and Pereira testified that the defendants were not; Hurd testified that he believed they were. Even assuming the correctness of the officer's recollection of the event, I nonetheless find the encounter impermissibly suggestive. Although a show-up does not ipso facto violate due process [see Stovall v. Denno, 388 U.S. 293, 302 (1966); Neil v. Biggers, 409 U.S. 188, 198

(1972)], it is fundamental that a confrontation in which a single suspect is viewed in the custody of the police is somewhat suggestive. United States ex rel. Barnwell v. Rundle, 337 F.Supp. 688, 690 (E.D. Pa. 1972) (Lord, C.J.). In the instant case, the suggestiveness was amplified by the fact that defendant Alejandro was identified at the Police Station by a man who was fully aware that the three individuals brought in by Officer McBean were more than casual suspects.

However, a finding that the station house show-up was impermissibly suggestive does not end this Court's inquiry. In the most recent Supreme Court determination on the subject, Justice Powell noted that "[t]he purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process". Neil v. Biggers, 409 U.S. 188, 199 (1972). In the instant case, defendants were not brought to the Frederiksted Police Station until about 3:00 a.m. To have staged a lineup at that time would have been impractical in the extreme. In addition, there is no evidence whatsoever in the record to indicate that the identification confrontation between Hurd and defendant Alejandro was anything but a chance encounter. Even assuming, arguendo, that the show-up had been arranged by the police, such an immediate confrontation may be justified on the ground that it may lead to the immediate release of an innocent suspect and enable the police to resume the search for the real culprit. See Bates v. United States, 405 F.2d 1104, 1106 (D.C. Cir. 1968). In Biggers, the Court noted that even if the confrontation procedure were suggestive, the central issue is whether under the "totality of

the circumstances" the identification is nonetheless reliable. Id. at 199.

Evaluating the facts of the instant case in light of the factors set forth in Biggers [see also United States ex rel. Choice v. Brierley, 460 F.2d 68, 72–73 (3d Cir. 1972)], I find that there is no likelihood of misidentification at trial. Undoubtedly the most important factor is the opportunity of the witness to view the perpetrator of the crime at or near the scene of the crime and at about the time of the commission of the crime. Hurd' viewed defendant Alejandro at a distance of two feet for two to three seconds in an area adequately illuminated by the headlights of the two vehicles and by house floodlights nearby. Particularly persuasive is the fact that Hurd demonstrated a great level of positiveness as to the identity of the driver of the car both at the station house confrontation and at the suppression hearing. Equally convincing is the fact that only two hours had elapsed between the crime and the confrontation. Finally, the description of the driver which Hurd gave to the police at the scene of the occurrence was manifestly accurate. Thus, despite the suggestivity inherent in the station house identification, I find that any subsequent in-court identification of the suspect will not be tainted thereby. See United States v. Wade, 388 U.S. 218, 240 (1967).

Defendant Santiago moves to suppress various statements made to Officer McBean the morning of August 14 as being violative of the standards set forth in Miranda v. Arizona, 384 U.S. 436 (1966). At the hearing, the prosecution entered into evidence an advisement of rights form, a waiver of rights or consent form, and a written statement, all purportedly signed by defendant Santiago. Although in his written statement, Santiago denies that he and his co-defendants took part in the crime charged, it is incriminating insofar as it places the defendants in the

immediate vicinity of Soto's home at approximately 1:00 a.m. on August 14.

My first determination must be whether the circumstances surrounding Santiago's signed waiver of Miranda rights at 3:15 a.m. indicate a knowledgeable and intelligent waiver of the privilege against self-incrimination and his right to counsel. See Escobedo v. Illinois, 378 U.S. 478, 490 n. 14 (1964). It is well established that the Government has a "heavy burden" to demonstrate that the waiver was knowingly and intelligently made. Miranda v. Arizona, 384 U.S. at 475; Government of the Virgin Islands v. Kirnon, Criminal Docket Nos. 114-73, 115-73, slip op. at 16 (June 28, 1974).

■ In its attempt to establish a voluntary waiver, the Government introduced a standard waiver form with Santiago's signature affixed. On cross-examination, Officer McBean testified that at the time he took the statement from Santiago, the defendant appeared intoxicated and had a very strong smell of alcohol on his breath. Officer McBean further noted on several occasions prior to the making of the statement, Santiago had fallen asleep. Furthermore, the defendant's two signatures on the two-page statement give the impression of having been made by an intoxicated person. Given this uncontroverted evidence of intoxication, I am compelled to find that Santiago was in fact drunk, and that both his verbal statement made to the detectives near Sion Farm and his written statement made at the Frederiksted precinct were not knowledgeably and intelligently made. Therefore, all such statements made by Santiago before and after his arrest on August 14, 1974 must be suppressed.

Defendants' arguments in support of their motion to suppress as evidence the revolver found by the police alongside the highway at or near the location where minutes before an object was thrown from the red and black sedan

have been considered and have been found to be neither meritorious or persuasive.

### ORDER

Upon the findings of fact and for the reasons contained in the foregoing Memorandum, it is hereby ORDERED:

1. That defendants' motion to suppress all statements made to the police by defendant Santiago immediately before, during and after his arrest on August 14, 1974 is GRANTED;

2. That defendants' motion to suppress as evidence the revolver found by the police in their search of the grass strip alongside the highway is DENIED;

3. That defendants' motion to suppress the station house identification of defendant Alejandro made by witness James Hurd is GRANTED; and

4. That defendants' motion to suppress the in-court identification of defendant Alejandro by witness James Hurd is DENIED.