Ronald S. McCOLLUM, Plaintiff,

v.

John L. SULLIVAN, Director of the
Division of Adult Corrections and the
State of Delaware, Defendants.

Civ. A. No. 79–609.

United States District Court,
D. Delaware.

Feb. 12, 1981.

L. Vincent Ramunno, Wilmington, Del., for plaintiff.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior Judge:

Petitioner was convicted in 1976 of rape in the first degree, kidnapping in the first degree, conspiracy in the second degree, and two counts of robbery in the first degree in the Superior Court of the State of Delaware. The Delaware Supreme Court affirmed his conviction and the Superior Court's denial of two motions for a new trial. *McCollum v. State*, No. 153, 1976 (Sept. 29, 1977) and *McCollum v. State*, No. 249, 1978 (Nov. 24, 1979).

Petitioner has sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis of the following nine constitutional violations which allegedly occurred during his trial:

1) ineffective assistance of counsel;
2) incompetency of petitioner to stand trial;
3) convening of jury panel which was not an impartial jury of peers;
4) use of statements made at arrest which were not freely and voluntarily given;
5) absence of probable cause for arrest;

6) improper witness identification of petitioner;

7) incorrect denial of motion for new trial;

8) insufficiency of the evidence; and

9) suppression of evidence.

Petitioner has also requested an evidentiary hearing on the question of his competency to stand trial.

■ As a preliminary step, it is necessary to eliminate any claims which do not assert deprivation of freedom in violation of the Constitution or laws or treaties of the United States; violations of state law are not cognizable under 28 U.S.C. § 2254(a). *U. S. ex rel. Choice v. Brierley*, 460 F.2d 68 (3d Cir. 1972). All of petitioner's claims assert constitutional violations[1] except the claim concerning denial of his motion for a new trial. On its face this is a matter of state law and thus not a proper ground for habeas relief.[2] Review of this claim is denied.

I. *Exhaustion of State Remedies*

■ The threshold question in reviewing a petition for a writ of habeas corpus is whether petitioner has exhausted the remedies available in the state courts as required by 28 U.S.C. § 2254(b).[3] In construing this requirement the Supreme Court has held that "the substance of a federal habeas corpus claim must first be presented to the state courts," *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). Thus a petitioner may raise a claim in the federal courts only if he has already raised it at all appropriate state court levels. *United States ex rel. Wilson v. Anderson*, 399 F.Supp. 41 (D.Del.1975). Petitioner has clearly exhausted his first two claims which were fully presented to the trial court in the evidentiary hearing[4] held in connection with the second motion for a new trial, D.5A–71, and briefed and argued to the State Supreme Court, D.5A–Briefs in No. 249, 1978. Petitioner's ninth claim of suppression of evidence was similarly presented to the Superior Court in the evidentiary hearing, D.5A–55, 56, regarding the first motion for a new trial, D.5A–36, and then briefed and argued to the Supreme Court, D.5A–Briefs in No. 153, 1976.

■ Petitioner's remaining claims have not been exhausted. They cannot be reviewed, therefore, absent rare or extraordinary circumstances which would justify deviation from the exhaustion standard. *U. S. ex rel. Trantino v. Hatrack*, 563 F.2d 86 (3d Cir. 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978). Petitioner's third, fourth and fifth claims regarding

1. *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970) (*en banc*) (ineffective assistance of counsel); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (incompetency of petitioner); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (trial by jury not representative of community); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961) (use of admission not freely and voluntarily given); U.S.Const. amend. IV (no probable cause for arrest); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (prejudicial identification procedure); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (insufficient evidence); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (suppression of evidence).

2. Only a broad interpretation of this claim as an assertion that, despite the lack of specific errors, the trial failed to constitute due process would make review by this Court possible. There is no support for such action in the record, nor has petitioner's counsel elaborated on this issue in his briefs.

3. 28 U.S.C. § 2254(b) reads as follows:
 An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

4. Docket No. 5A—Items 87, 88, 84. Docket entries will hereafter be cited as "D.___," followed by the number or title of the particular part referenced.

the jury panel and the arrest procedure were raised only in his second motion for a new trial to the Superior Court. No evidence was presented at the succeeding evidentiary hearing, and the Superior Court neither considered nor ruled upon these claims. Nor did petitioner raise these claims in his briefs to the Delaware Supreme Court. Petitioner has also failed to do more than make bare allegations of constitutional deprivation as to these claims in his petition to this Court. His brief sets forth neither the allegations nor factual support. This in itself is an adequate basis for denying review. *See Bernier v. Moore*, 441 F.2d 395 (1st Cir. 1971).[5] Thus, these claims were never fairly presented to the state courts, and review is denied.

■ Petitioner also failed to exhaust his claim of improper identification procedures in the state courts, for he never presented it to the trial court, D.5A–19, 20, 36, 71, though he did raise it on appeal to the State Supreme Court, D.5A–Appellant's Opening Brief in No. 153, 1976. As a result, this claim could not properly have been raised in the State Supreme Court, *U. S. ex rel. Wilson v. Anderson, supra*, and the Supreme Court made no mention of this question in its brief opinion. Moreover, though presentation of an issue to the highest state court may satisfy the exhaustion requirement even if that court does not expressly rule on it, *see U. S. ex rel. Montgomery v. Brierley*, 414 F.2d 552 (3d Cir. 1969), *cert. denied*, 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970); *Powell v. Keve*, 409 F.Supp. 228 (D.Del.1976), petitioner's presentation was too sketchy for this Court to infer that the state court had an opportunity to evaluate the claim. *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976).[6]

■ Petitioner's eighth claim of insufficient evidence must also be denied for failure to exhaust state remedies. Petitioner argues that since the legal basis for this claim, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), was decided after the final Delaware Supreme Court decision in this case, he should not have to proceed through the state courts once again to raise this issue. Although the general issue has been raised in the state courts prior to the issuance of the United States Supreme Court opinion on which a petitioner relies, the exhaustion requirement entitles a state court to an opportunity to decide whether the newly-announced decision applies to the facts of the particular case, regardless of the petitioner's prior appearances in state court. *Blair v. People of State of Calif.*, 340 F.2d 741 (9th Cir. 1965); *Pate v. Holman*, 343 F.2d 546 (5th Cir. 1965). Where, as here, a petitioner has not even raised the general issue in the state courts, return to the state courts is mandatory. Nor does this situation constitute a rare or extraordinary circumstance which might justify deviation from the exhaustion standard. *U. S. ex rel. Trantino v. Hatrack, supra; United States ex rel. Sostre v. Festa*, 513 F.2d 1313 (2d Cir.), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). Since in the area of criminal procedure, small but significant changes in the law occur frequently, petitioner's situation cannot be considered rare or extraordinary. Review of the merits must therefore be denied.

## II. *Merits of the Remaining Claims*

The Court must now consider the merits of the claims with respect to which petitioner has exhausted his state remedies.

### A. *Incompetency of Petitioner to stand trial.*

■ Petitioner asserts that he was not competent to stand trial by reason of men-

---

5. Further, petitioner's counsel acknowledged during oral argument that these claims are only examples of possible procedural defects which petitioner's former counsel should have challenged at trial, i. e., merely part of the ineffective assistance of counsel claim, which is discussed *infra* at 871–872.

6. Petitioner's counsel acknowledged that this claim also was only a possible claim which former counsel should have pursued.

tal illness or mental defect, and requests an evidentiary hearing before this Court on this issue. The guidelines for granting an evidentiary hearing were laid down in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and codified in 28 U.S.C. § 2254(d). Petitioner seeks to present the testimony of a doctor who will both testify to petitioner's incompetence at trial and attempt to discredit the testimony of the state-appointed doctor, Dr. T. Richard Huxtable, Jr., who testified at the second evidentiary hearing held before the Superior Court. Petitioner has not referred to any particular ground stated in 28 U.S.C. § 2254(d) as the basis for his request, and the Court finds none applicable. Petitioner's competency was the subject of a post-trial evidentiary hearing, both the court-appointed doctor and petitioner's expert witness testified fully, and the trial court made a lengthy evaluation of the testimony on which he based his decision. Thus, an expert chosen by plaintiff has already testified as to petitioner's incompetence, and unless the Court is to regard every expert as a source of new evidence, petitioner's wish to present further medical testimony as to his incompetence is not a sufficient reason for granting an evidentiary hearing.

Petitioner also would have this expert testify to Dr. Huxtable's prejudice as a result of his position in a state hospital. At the previous hearing, however, the petitioner called Dr. Huxtable as a witness and examined him at length as to his evaluations of the petitioner prior to trial and afterward. Dr. Huxtable's position as a psychiatrist at Delaware State Hospital was disclosed, and petitioner sought throughout the hearing to suggest and demonstrate some prejudicial effect of Dr. Huxtable's position on his opinion. Under these circumstances the suggestion of additional testimony concerning Dr. Huxtable's prejudice hardly establishes that the petitioner did not receive "a full, fair, and adequate hearing in the State court proceeding."

The Court concludes that the petitioner was given a full and fair opportunity to present whatever evidence he wished at the trial court hearing and that the court fully considered the evidence in making its written determination. Consequently, this Court may not overrule the trial court unless an incorrect legal standard was applied or the trial court's factual determination is not fairly supported by the record as a whole. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *United States ex rel. Parson v. Anderson*, 354 F.Supp. 1060 (D.Del.1972), *aff'd*, 481 F.2d 94 (3d Cir.), *cert. denied*, 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973); 28 U.S.C. § 2254.

### 1. Application of legal standard

The trial court applied the standard for competence set forth in 11 Del.C. § 404: "whether the defendant, because of mental illness or mental defect, was unable to understand the nature of the proceedings against him, or give evidence in his own defense, or instruct counsel on his behalf," D.5A–83 at 3. The Federal standard for incompetence is set out at 18 U.S.C. § 4244 as the inability "to understand the proceedings against him or properly to assist in his own defense." This standard was explicated in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (*per curiam*), as "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Thus the standard applied by the trial court was substantially the same as the Federal standard, which this Court must apply.

### 2. Factual determination

This Court must also judge whether the trial court's factual determination that petitioner was competent was fairly supported by the record as a whole. Upon review, this Court concurs in this finding.

In applying the standard of competence, the trial court was confronted with a defendant with a history of mental problems beginning at the time of his induction into the armed forces in 1970. When petition-

er's attorney first met with the petitioner, the difficulty in communicating with him prompted the attorney to seek a psychiatric examination. Examinations by several doctors at the Delaware State Hospital, including Dr. Huxtable, indicated that petitioner was competent to stand trial. At trial petitioner was able to testify responsively except in one instance. The exception occurred during direct examination when petitioner was asked whether he had raped the victim; he initially replied in the affirmative and then immediately corrected himself. When asked the reason for his first response, petitioner said that he had heard voices telling him to give this reply.[7] Petitioner has argued that his explanation for the affirmative response indicates that he was hallucinating and therefore incompetent when he so responded.

In evaluating petitioner's competence, the trial court focused on the question of whether petitioner had been experiencing an hallucination when he made the critical statements admitting guilt and giving the reason for the admission. Since there were no other instances of aberrant behavior by defendant, this focus was appropriate. The Court then found that petitioner had not suffered an hallucination.[8]

 Despite petitioner's history of mental illness, the reports made by Drs. Huxtable, Galliani and Iqbal on the basis of observation of the petitioner at the Delaware State Hospital between February 2 and March 24, 1976, indicate that petitioner's illness was in a good state of remission immediately before trial. That petitioner was alert and coherent during trial preparation and at trial is supported by the testimony of his trial attorney. Most importantly, as to the significance of the petitioner's critical statements while testifying, the state court's finding is supported by the testimony of Dr. Huxtable. He concluded that these statements did not and could not establish that petitioner was experiencing an hallucination given that petitioner's testimony at all other times had been coherent, relevant, lucid, and without evidence of thought fragmentation or hallucinatory material. Although petitioner's expert, Dr. Floyd Cornelison, Jr., concluded that petitioner had probably been hallucinating because there was no other explanation for the statements, Dr. Huxtable's testimony adequately supports the state court's determination. Therefore, this Court will not disturb the trial court's findings as to petitioner's competence to stand trial.

 Petitioner also appears to argue that his constitutional rights were violated when the trial court failed to respond to petitioner's critical testimony by halting the trial and holding a hearing to determine petitioner's competency. Such action is required only if the evidence raises a bona fide doubt as to a defendant's competence. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Here, in view of the fact that a psychiatric evaluation of petitioner made immediately prior to trial had established his competency to stand trial, petitioner's critical testimony was not so unusual as to have commanded immediate attention to petitioner's mental state.[9] The abundant evidence of aberrant behavior found in the *Pate* and *Drope* cases cannot be found here. Moreover, a post-trial evidentiary hearing

---

**7.** The exact exchange was as follows:

 Q. Okay. Well, Ronald, did you, in fact, rape the young lady that was here and testified yesterday?
 A. Yeah, I did—no, I didn't.
 Q. Which did you, yes, you did or, no, you didn't?
 A. No, I didn't.
 Q. Why did you say, "Yes, I did."?
 A. I keep hearing—I think I hear—people say things to me that I should be saying to you.

D.5A–41 at 75.

**8.** Although the trial court did not specifically state that petitioner had not suffered an hallucination, this Court regards the finding that "it's unlikely and speculative at best that the defendant was responding to an hallucination," D.5A–83 at 10, as the equivalent.

**9.** Petitioner's own attorney was not aroused to request that the trial be adjourned for a competency hearing.

was held after petitioner filed a motion for a new trial on the basis of incompetency. Such a procedure has been sanctioned "when the findings at the post conviction hearing were based on evidence derived from knowledge contemporaneous to the trial." *United States ex rel. McGough v. Hewitt*, 528 F.2d 339, 344 (3d Cir. 1975); *see also United States ex rel. Trantino v. Hatrack, supra.* This hearing was held within two years of the trial before the judge who presided at the trial, and the psychiatrist who had examined the petitioner prior to trial was able to testify. Thus, this Court finds no constitutional violation in the consideration given petitioner's mental fitness at trial.

## B. *Ineffective Assistance of Counsel.*

Petitioner's second motion for a new trial in the state court was also based on the claim of ineffective assistance of counsel. At the evidentiary hearing held on the motion, extensive testimony was presented and the theory put forth here was fully elaborated. Petitioner thus had a full and fair opportunity to present all the evidence he wished. In fact, he has not sought an evidentiary hearing before this Court to present any new evidence, nor has he argued any new analyses of the evidence. The trial court thoroughly examined the question in its written opinion. Upon review this Court holds that the legal standard applied was constitutional and agrees with the conclusions of the trial court.

■ The trial court tested petitioner's claim that his right to effective assistance of counsel was violated by determining "whether under all the circumstances the defendant received genuine and effective assistance of counsel," D.5A–83 at 10. This is essentially the same standard as that set forth in *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970) (*en banc*), as "the exercise of the customary skill and knowledge which normally prevails at the time and place." Although somewhat differently phrased, both standards are versions of a reasonable effectiveness test as distinguished from the traditional "sham and mockery" test.

The facts are not in dispute on this issue. Insofar as the application of the standard of effectiveness of counsel to the facts is in part a question of law, this Court must review it. Thus, this Court must assess counsel's assistance to petitioner. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976).

■ Petitioner has raised a myriad of claims, yet neither individually nor as a totality do they establish ineffective assistance of counsel. Many reflect *post hoc* disagreement with the trial strategy of petitioner's trial counsel, J. Dallas Winslow, Jr. Winslow decided to rely on the alibi defense that petitioner and a friend were together in his apartment at the time of the incident. Rather than weaken this defense by attempting to prove that no rape had occurred, Winslow decided to refrain from attacking the victim's character and reputation or her narration of events. Winslow did not follow this course because he reasonably did not find the "no-rape" theory plausible. Petitioner also argues that his counsel should have pursued the discrepancy between the victim's description of her assailant and petitioner's appearance and should have questioned her as to the reason for her failure to identify petitioner immediately as a neighbor whom she had previously seen. Petitioner, in fact, exaggerates the potential weaknesses of the victim's testimony; petitioner can only suggest, not convince, that intense cross-examination might have discredited the victim's testimony.

Petitioner also argues that had Winslow investigated the scene of the crime, he might have discovered helpful witnesses who were not called at trial. The victim's neighbors, for example, subsequently testified at a post-trial evidentiary hearing that they did not hear any of the noise which "should" have accompanied the incident and had seen a stranger who was not the petitioner on the premises at the time of the incident. However, the state court found that their testimony was not likely to have

produced a different result at the trial. Winslow's failure to investigate does not therefore indicate ineffective assistance.

Another major allegation of ineffective assistance is Winslow's failure to have petitioner examined by a psychiatrist not in the State's employ, or to request a competency hearing once petitioner had testified. However, there is no evidence in the record contradicting the pre-trial report of Dr. Huxtable, nor has petitioner been able to establish that he was incompetent at trial. Thus, this claim lacks the necessary basis.

Petitioner further argues that his counsel elicited testimony that was damaging to petitioner. In particular petitioner cites his testimony that he had been smoking marijuana on the night of the incident. Winslow's allegation that this statement was unexpected, in that petitioner and his alibi witness had never given this response when Winslow prepared them to testify, is persuasive. In any case, there is no proof that in the context of this rape case such testimony would have been prejudicial.

Similarly, on examination by Winslow, petitioner's mother stated that petitioner had been arrested previously. Winslow had reasonably assumed that the mother's emphatic assertions that her son had never been in any trouble implied no arrests. In any case, the testimony did more to counter the negative implications in her statements upon cross-examination than to establish "an extensive criminal record." Finally, while Detective Chapman's testimony in response to Winslow's questions regarding his experience with drugs was not helpful to petitioner, Winslow's lack of skill in preventing Chapman from making comments harmful to petitioner while testifying was not below the level of ability of most attorneys.

The remainder of petitioner's arguments are less compelling, supported by neither logic nor the record.[10] Petitioner's trial counsel met with his client and witnesses several times before trial and developed a coherent and reasonable trial strategy; petitioner's allegations of ineffective and prejudicial assistance simply do not withstand scrutiny. Petitioner's trial counsel met the standards of normal competence, and there was no violation of petitioner's constitutional right to effective assistance of counsel.

### C. Suppression of Evidence.

 Finally, petitioner's claim of suppression of evidence must be rejected because petitioner is unable to establish the elementary fact that the state has ever possessed or had knowledge of this evidence which it would have been required to disclose to the defense if material. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 106–107, 96 S.Ct. 2392, 2398–2399, 49 L.Ed.2d 342 (1976). At the first post-trial evidentiary hearing before the Superior Court, petitioner produced a witness who asserted that she had made certain statements to police officers on the night of the incident. The police claim that she made no such statements and therefore that they took no such statement. Thus there is disagreement as to the existence of the evidence as well as to whether the police suppressed it. There is no indication that the police officer took the witness's statement. Nor, on the basis of the hearing transcript of the testimony of the witness and the police officer, D.5A–55, 56, is this

---

**10.** Petitioner has not suggested why Winslow should have filed any suppression motions. He has not supplied the FBI report which Winslow allegedly received and failed to utilize; this claim rests solely on the confused recollections of petitioner's parents as to the report's substance. Petitioner has not cited any legal support for his claim that Winslow should have challenged the composite drawing introduced by the State. Petitioner alleges that Winslow did not request an alibi charge; not only was this claim disputed by Winslow, but petitioner has not supplied a copy of the jury charge given, from which this Court might assess the effect of such a failure. Finally, petitioner argues that Winslow should have introduced petitioner's medical records to give the jury some evidence of his mental background. Since the question of competency was not before the jury nor had an insanity defense been raised, such evidence would hardly have detracted from the State's case nor assisted petitioner's alibi defense.

Court persuaded that the witness made statements which were so definite that the police officer would have suppressed evidence by failing to take her statement. Absent proof of possession or knowledge of the evidence, there is no basis for a suppression claim. *United States v. Goldberg*, 582 F.2d 483, 490 (9th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).

In summary, the petition for a writ of habeas corpus is denied for the following reasons. The claim of incorrect denial of petitioner's motion for a new trial does not assert a constitutional violation. Five other of petitioner's claims are denied for failure to exhaust state remedies. Finally, petitioner failed to establish his claims that evidence was suppressed and that petitioner was incompetent to stand trial and did not receive effective assistance of counsel.